HANSON BRIDGETT LLP
NEAL L. WOLF, SBN 202129
nwolf@hansonbridgett.com
ANTHONY J. DUTRA, SBN 277706
adutra@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:    (415) 541-9366

*Proposed Attorneys for Debtor
and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. 21-40363 |
| CALIFORNIA-NEVADA METHODIST HOMES[1], | Chapter 11 |
| Debtor. | **MOTION OF DEBTOR CALIFORNIA-NEVADA METHODIST HOMES FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING FINAL HEARING** |

---

[1] The last four digits of the Debtor's federal tax identification number are 2411. The mailing address for the Debtor is 1850 Alice Street Oakland, CA 94612.

17332518.4

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

California-Nevada Methodist Homes, as debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**") respectfully requests that the Court enter an interim order, in the form attached as **<u>Exhibit A</u>** hereto (the "**Interim Order**") and a final order, in the form attached as **<u>Exhibit B</u>** hereto (the "**Final Order**"), pursuant to sections 361, 363, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") (i) authorizing the use of cash collateral on an interim and final basis, (ii) granting adequate protection, and (iii) scheduling a final hearing.

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

17332518.4

## INTRODUCTORY STATEMENT

By this Motion, Debtor requests entry of the Interim Order and Final Order granting, among other things, authorizing the use of cash collateral on the following terms:

(1) **Entities with Interest in Cash Collateral:** Wilmington Trust, National Association and Office of Statewide Health Planning and Development of the State of California;

(2) **Purpose of the Use of Cash Collateral:** To be used in the ordinary course of business for the categories of expenses listed in the Budget (as defined below), including the payment of employee wages, employee benefits, utilities, taxes, insurance premiums, medical supplies, and expenses to others who in the judgment of the Debtor's management, provide the essential services needed to operate, maintain and insure the Debtor's assets as well as to retain and pay costs of professionals, consultants and advisors who will enable the Debtor to reorganize or, if appropriate, market the Debtor for potential sale;

(3) **Duration and Other Terms:** Pursuant to the terms of the Interim Order from the Petition Date until the earlier of June 15, 2021 or the entry of the Final Order, and thereafter pursuant to the terms of the Final Order. Use of the cash collateral is to be consistent with the Budget and not to exceed a 10% variance from the Budget measured every 4 weeks of the Budget.

(4) **Adequate Protection:** Replacement liens in Debtor's assets subject to a Carve-Out for certain professional fees and statutory U.S. Trustee fees. Replacement liens will be, to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Case and any Successor Case.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this motion (the "**Motion**") pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtor consents to the entry by the Court of a final order with respect to this Motion

## II. BACKGROUND

### A. General Background

On March 16, 2021 (the "**Petition Date**"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors has yet been appointed in the Case.

Additional information about the Debtor's business and affairs, capital structure and prepetition indebtedness, and the events leading up to the Petition Date is set forth in the Declaration of Steven Nerger in Support of Debtor's "First Day Motions" (the "**First Day Declaration**"), filed contemporaneously with this Motion, which is incorporated herein by reference.

### B. The State of California Issues Bonds at Debtor's Request

On or about October 1, 2015 the California Health Facilities Financing Authority (the "**Authority**"), a public instrumentality of the State of California, issued $32,920.000 in revenue bonds (the "**Bonds**") at the request of the Debtor. In connection with the issuance of the Bonds, the Authority entered into an Indenture Agreement with

-4-

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

17332518.4

Wilmington Trust, National Association ("**Wilmington**"), under which Wilmington became the indenture trustee for the Bonds and representative of the bondholders.

### C. Debtor Borrows the Bond Proceeds

Also on or about October 1, 2015 the Debtor and various counterparties entered into a series of related transactions in connection with the issuance of the Bonds. First, the Authority and Debtor entered into a Loan Agreement under which the Authority agreed to lend the proceeds from the sale of the Bonds to the Debtor, and in return Debtor agreed to make payments to Wilmington for the payment of interest and repayment of principal to the holders of the Bonds. Second, the Debtor, the Authority, and the Office of Statewide Health Planning and Development of the State of California ("**Cal-Mortgage**"), a separate instrumentality of the State of California, entered into a "Contract of Insurance" whereby Cal-Mortgage agreed to insure Debtor's repayment of the Bonds. Third, the Debtor executed two separate deeds of trust (the "**Deeds of Trust**"), under which it which it agreed to give Cal-Mortgage and the Authority a security interest in Debtor's two CCRC facilities and other collateral (collectively, the "**Collateral**"), including, among other things, "[a]ll accounts, accounts receivable and other rights to payment of money now owned or hereafter acquired" by the Debtor, including "deposit accounts." Fourth, the Authority assigned its rights under the Loan Agreement, the Contract of Insurance, and the Deeds of Trust to Wilmington. Fifth, Debtor, Cal-Mortgage, Wilmington, and California Bank & Trust entered into a Deposit Account Control Agreement with respect to Debtor's bank accounts at California Bank & Trust. And sixth, Cal-Mortgage and Wilmington filed a UCC-1 financing statement declaring their security interest in the Collateral.

The net effect of these interrelated transactions is that (1) the Debtor borrowed $32,920,000 in proceeds from the issuance of the Bonds (the "**Bond Debt**"); (2) Debtor agreed to repay the $32,920,000 Bond Debt to Wilmington with interest; (3) Cal-Mortgage agreed to guarantee Debtor's repayment of the Bond Debt to Wilmington; and (4) Debtor

17332518.4

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

granted a security interest in its cash to Cal-Mortgage and to Wilmington to secure Debtor's repayment of the Bond Debt.

### D. The Bonds

The Bonds currently accrue interest at an annual interest rate of 5%. Interest is paid to the holders of the Bonds semi-annually on January 1 and July 1 of each year. A portion of the Bonds mature annually on July 1 of each year until 2026, and thereafter a portion of the Bonds matures on July 1 in 2030, 2035, and 2045. The principal amount that matures on July 1, 2021 is $630,000. Based on the current outstanding principal balance of $30,225,000, the semiannual interest payment for the Bonds on July 1, 2021 will be $755,625. Pursuant to the terms of the Loan Agreement, the Debtor is responsible for making monthly payments to Wilmington sufficient to cover 1/6 of the upcoming semi-annual interest payment and 1/12 of the principal balance scheduled to mature on the following maturity date. The Debtor has not made monthly payments on the Bond Debt since February 2020. As a result, Wilmington has drawn down on a reserve fund established when the Bonds were issued (the "**Bond Reserve Fund**"). The balance of the Bond Reserve Fund as of February 28, 2021 was $785,120.80, meaning that the Bond Reserve Fund is sufficient to cover the semi-annual interest payment on July 1, 2021 and a portion of the principal balance that will mature on July 1, 2021, but the Bond Reserve Fund is insufficient to cover approximately $600,000 of the principal repayment due on July 1, 2021.

### III. THE DEBTOR'S NEED FOR THE USE OF CASH COLLATERAL

The Debtor has determined that absent the use of cash collateral, it will be unable to operate its business during the Chapter 11 Case, irreparably harming the Debtor's estate and creditors. If the Debtor is unable, on a consistent basis, to maintain its business and demonstrate financial stability to existing and future residents, the Debtor will lose existing residents, key employees, and vendors, will be unable to attract new residents and will ultimately be forced to cease operations. This will cause harm to the

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

Debtor, but also to its residents who expect a continuum of quality care, potentially leaving residents without food, medical supplies, proper medical care, and other services they require. Therefore, the Debtor's immediate access to cash collateral is necessary to preserve and maximize the value for the benefit of all parties in interest. Thus, the use of cash collateral is essential to Debtor's continued ability to operate, maintain the value of its assets and properly care for its residents until consummation of a plan.

The Debtor has an immediate and critical need to use cash collateral to pay, in accordance with the 13-week budget ("**Budget**") which will be attached to the proposed Interim Order as Exhibit 1, various items in the ordinary course of business and as authorized by the Court, including employees, employee benefits, utilities, taxes, pharmacy items and dietary materials and to others who in the judgment of the Debtor's management, provide the essential services needed to operate, maintain and insure the Debtor's assets. In addition, the Debtor requires the use of cash collateral to retain and pay costs of professionals, consultants and advisors who will enable the Debtor to reorganize the Debtor or, if appropriate, market the Debtor for potential sale, in a manner that maximizes value for the Debtor's estate and its creditors, as may be approved by the Court. Taken together, the services provided by all of the foregoing parties and other entities are critical to the preservation of the Debtor's business and asset value.

The Debtor reasonably believes that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget. Without use of cash collateral, the Debtor would suffer immediate and irreparable harm and the entire bankruptcy proceeding will be jeopardized to the significant detriment of the Debtor's estate and its creditors.

After considering its alternatives, the Debtor has concluded that the use of cash collateral pursuant to the terms of the Interim Order and Final Order represents the best option available to interested parties, which funds will be used to maintain the Debtor's assets and maintain its high standards for the benefit of its residents during the Chapter

11 Case. The Debtor believes that the terms of the use of cash collateral contained in the Interim Order and Final Order protects Wilmington and Cal-Mortgage against diminution in the value of their interests in the Collateral because the use, sale, or lease of the cash collateral will, among other things, preserve the value of the Debtor as a going concern and preserve the value of the Debtor's facilities. The Debtor therefore believes the terms of the Interim Order and Final Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by fair consideration.

At a minimum, the Debtor's inability to use cash collateral would disrupt Debtor's operations as a going concern, would severely hamper any efforts to market the Debtor and/or its facilities for potential sale, would eliminate or significantly decrease the possibility of confirmation of a plan of reorganization, and would otherwise not be in the best interests of the Debtor, its estate, or creditors, including the residents and the bondholders.

At this time, the Debtor is not contemplating the need for postpetition financing. Instead, the Debtor intends to operate its business solely on the use of the existing cash collateral. Access to existing cash collateral will provide the Debtor with the liquidity necessary to ensure that the Debtor has sufficient working capital and liquidity to operate its business, maintain its high standard of resident care, and thus preserve and maintain the value of the Debtor's estates. Without access to such liquidity, the Debtor and its estate will face irreparable harm.

## IV.    RELIEF REQUESTED

By this Motion, the Debtor requests that this Court enter an order pursuant to sections 361 and 363 of the Bankruptcy Code (i) authorizing the use of cash collateral on an interim and final basis, (ii) granting adequate protection in the form of replacement liens, and (iii) scheduling a final hearing on the Motion.

Pursuant to Bankruptcy Rule 4001(b)(1)(B), the following is a concise statement of the material provisions of the Interim Order:

| Material Terms | Summary | Reference to Interim Order |
|---|---|---|
| 4001(b)(1)(B)(i) – entity with interest | Wilmington and Cal-Mortgage | ¶ 3. |
| 4001(b)(1)(B)(ii) – purpose for use | Expenses in the ordinary course of business for categories of expenses listed in the Budget | ¶ 2; Exh. 1. |
| 4001(b)(1)(B)(iii) – material terms and duration of use | The interim use of cash collateral from the Petition Date through the earlier of June 15, 2021 or the date a Final Order is entered to fund its day-today operations, including payroll for its employees and ongoing services to their residents. The Debtor also requests the use of cash collateral on a final basis pursuant to the terms of a Budget, which currently runs through June 15, 2021, provided, however, that Debtor may use cash collateral in excess of the aggregated amount of operating disbursements not to exceed ten percent (10%) (the "**Variance**") measured every 4 weeks of the Budget. | ¶¶ 2, 9, 10. |
| 4001(b)(1)(B)(iv) – liens, cash payments, or other adequate protection to be provided to entity with interest | Wilmington and Cal-Mortgage are entitled to receive adequate protection to the extent of any diminution in value of its interests in the Collateral. The proposed Interim Order provides for Wilmington and Cal-Mortgage to receive replacement liens (the "**Adequate Protection Liens**") to the same extent, validity and priority as their prepetition liens (the "**Prepetition Liens**"). | ¶¶ 3, 4. |
|  | The Adequate Protection Liens shall be subject to (a) allowed professional fees and disbursements of professionals (i) retained by the Debtor, pursuant to Bankruptcy Code section 327 and (ii) by professionals retained by the official committee of unsecured creditors, if any, pursuant to Bankruptcy Code section 1103(a) and (b) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, and any fees payable to the Clerk of the Bankruptcy Court (collectively, the "**Carve-Out**") and shall otherwise be junior only to any valid, perfected, unavoidable liens or security interests that are superior to the Prepetition Liens in existence as of the Petition Date, or any valid and unavoidable liens or security interests that are senior in priority to the Prepetition Liens that are | ¶ 4 |

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

17332518.4

| Material Terms | Summary | Reference to Interim Order |
|---|---|---|
| | perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code. | |
| 4001(b)(1)(B)(iv) – liens, cash payments, or other adequate protection to be provided to entity with interest (continued) | The Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Chapter 11 Case or in any other proceedings superseding or related to the Chapter 11 Case (collectively, the "**Successor Case**"), and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case or any Successor Case, or upon the dismissal of the Chapter 11 Case. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens. Notwithstanding anything else in the Interim Order to the contrary, the cash collateral may be used for payment of the Carve-Out. | ¶ 4 |
| | As further adequate protection Wilmington and Cal-Mortgage shall be granted, subject to the Carve-Out, as, and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Case and any Successor Case (the "**Adequate Protection Superpriority Claims**"). Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, as and to the extent provided by Bankruptcy Code Section 507(b); provided, however, that the Adequate Protection Superpriority Claims shall be subject to the Carve-Out. | ¶¶ 5, 6 |
| | As further adequate protection, the Debtor shall provide to Wilmington and Cal-Mortgage (or their respective counsels of record, if any) on Wednesday of each week (commencing with the second week after the Petition Date), a weekly report in the same form as the Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday | ¶ 8 |

-10-

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

17332518.4

| Material Terms | Summary | Reference to Interim Order |
|---|---|---|
| | compared to the Budget and detailing any variances of more than 10% from the disbursements and receipts in the Budget. | |

## V. LEGAL ARGUMENT

Under section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral unless (a) each entity that has an interest in such collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section. 11 U.S.C. §363(c)(2).

In the case at bar, the Court should allow the use of cash collateral because the interest of Wilmington and Cal-Mortgage are adequately protected. Section 361 of the Bankruptcy Code provides a *non-exclusive* list of ways to provide adequate protection, including periodic cash payments, the grant of liens on new collateral, and replacement liens. 11 U.S.C. §361. What constitutes adequate protection must be decided on a case by case basis. *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987). The focus of the adequate protection requirement is to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. *In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994).

The Debtor submits that the proposed adequate protection to be provided to the Wilmington and Cal-Mortgage, specifically, the granting of the Adequate Protection Liens and the Adequate Protection Superpriority Claims, along with periodic reporting requirements, is sufficient under the particular circumstances of this Case. The Debtor submits that the proposed adequate protection is appropriate and sufficient to protect Wilmington and Cal-Mortgage from any diminution in value of their collateral. The cash collateral will be used for funding business operations and allowing the Debtor to transition into the Chapter 11 Case. Immediate access to this liquidity will permit the

-11-

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

17332518.4

Debtor to fund payroll, pay vendors, provide patient care, and otherwise continue business in the ordinary course. If Cash Collateral is not available, the Debtors will dissipate value to the detriment of Wilmington, Cal-Mortgage, and other stakeholders, including employees and patients. Thus, the use of cash collateral will protect Wilmington's and Cal-Mortgage's security interests by preserving the value of the Collateral. *See In re Salem Plaza Assocs*., 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor). *See also Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.*), 193 B.R. 713, 716 (Bankr. D. Del. 1996); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992).

In light of the foregoing, the Debtor submits that the proposed adequate protection to be provided is appropriate and necessary to protect Wilmington and Cal-Mortgage against any diminution in value and is also fair and appropriate on an interim basis under the circumstances of this case and to ensure that the Debtor is able to continue using cash collateral in the near term, for the benefit of all parties in interest and its estate. In order to avoid immediate and irreparable harm and prejudice to the Debtor, its estate and all parties in interest, the Debtor requests that the Court authorize the Debtor to use cash collateral on an interim basis and schedule a hearing to consider entry of a final order.

## VI.    NOTICE

The Debtor will serve notice of this Motion upon:  (i) the Office of the United States Trustee; (ii) Debtor's list of creditors holding the twenty (20) largest unsecured claims; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the Northern District of California; (v) the California Health Facilities Financing Authority; (vi) the Office of Statewide Health Planning and Development of the State of California; (vii) Wilmington Trust, National Association; and (viii) all parties who have formally appeared in this Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002.  In light of

-12-

17332518.4

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

the nature of the relief requested, the Debtor submits that no other or further notice is necessary.

No prior motion for the relief requested herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter an interim order, in the form attached hereto as **Exhibit A** and a final order, in the form attached hereto as **Exhibit B**: (i) authorizing the use of cash collateral on an interim basis; (ii) granting adequate protection; (iii) scheduling a final hearing; and (iv) granting the Debtor such other and further relief as is just and proper under the circumstances.

DATED: March 16, 2021                    Respectfully submitted,

HANSON BRIDGETT LLP

By:      */s/ Neal L. Wolf*
          NEAL L. WOLF
          ANTHONY J. DUTRA

          *Proposed Attorneys for Debtor*
          *and Debtor in Possession*

17332518.4

-13-

MOTION OF DEBTOR FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL

Case: 21-40363   Doc# 13   Filed: 03/16/21   Entered: 03/16/21 16:51:34   Page 14 of 32

HANSON BRIDGETT LLP
NEAL L. WOLF, SBN 202129
nwolf@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

*Proposed Attorneys for Debtor and Debtor in Possession*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CALIFORNIA-NEVADA METHODIST HOMES,[1]<br><br>Debtor. | Case No. 21-40363<br><br>**INTERIM ORDER (A) AUTHORIZING POST-PETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (D) GRANTING RELATED RELIEF** |

---

[1] The last four digits of the Debtor's federal tax identification number are 2411. The mailing address for the Debtor is 1850 Alice Street Oakland, CA 94612.

17338880.3

Upon consideration of the motion (the "**Motion**")[2] of California-Nevada Methodist Homes, as debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**") pursuant to section 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") for entry of an interim order and final order (i) authorizing the use of cash collateral, (ii) granting adequate protection, and (iii) providing related relief; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"); and this matter being a core proceeding pursuant to 28 U.S.C. § 157; and venue of these Chapter 11 Cases and the Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion was sufficient under the circumstances, and it appearing that other or further notice need not be provided; and the Court having considered the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing held before this Court to consider the Motion on an interim basis (the "**Interim Hearing**"); and the Court having found that the legal and factual bases set forth in the Motion and at the Interim Hearing establish good and sufficient just cause for the relief granted in this interim order (the "**Interim Order**"),

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is hereby **GRANTED**, on an interim basis, to the extent set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of

---

[2] Capitalized words not otherwise defined herein shall have the same meanings ascribed to such terms in the Motion.

-2-
INTERIM ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL

17338880.3

rights included therein, are hereby denied and overruled. The rights of all parties in interest to object to the entry of a final order (the "**Final Order**") on the Motion are reserved.

2.     Subject to the terms and conditions set forth in this Interim Order, the Debtor is, through and including the earlier of June 15, 2021 or the entry of a Final Order on the Debtor's use of cash collateral, authorized pursuant to Bankruptcy Code sections 105, 361, 362, and 363, and Bankruptcy Rules 2002, 4001, 6003, and 9014 to use cash collateral on an interim basis. The cash collateral may only be used to fund the types and corresponding amounts of itemized expenditures contained in the budget attached hereto as Exhibit 1 (the "**Budget**"); provided, however, that the Debtor may use cash collateral in excess of the aggregate operating disbursements so long as the percentage of deviation of the aggregated expenses during the 4 week measuring period does not exceed ten percent (10%) (the "**Variance**").

3.     As adequate protection for the interest of Wilmington and Cal-Mortgage, for, and solely to the extent of, any diminution in the value of Wilmington's and Cal-Mortgage's respective interest in the Collateral resulting from (i) the Debtor's use of cash collateral, (ii) the use, sale, or lease of the Collateral (other than cash collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, Wilmington and Cal-Mortgage are hereby granted a continuing replacement security interest in, and lien (collectively, the "**Adequate Protection Liens**"), which shall have the same priority, validity, force, extent, status of perfection (if any), and effect as the prepetition liens that they replace (the "**Prepetition Liens**"), effective as of the Petition Date without the necessity of Wilmington or Cal-Mortgage taking any further action, upon the right, title and interest in the following property of the Debtor:

      a.      All pre-petition Collateral of Wilmington or Cal-Mortgage, including all proceeds, profits, rents, and products thereof; and

      b.      Property acquired by the Debtor after the Petition Date, which is of the same nature, kind, and character as the prepetition Collateral, and all proceeds, profits, rents, and products thereof.

4.      The Adequate Protection Liens shall be subject to (a) allowed professional fees and disbursements of professionals (i) retained by the Debtor, pursuant to Bankruptcy Code section 327 and (ii) by professionals retained by the official committee of unsecured creditors, if any, pursuant to Bankruptcy Code section 1103(a) and (b) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, and any fees payable to the Clerk of the Bankruptcy Court (collectively, the "**Carve Out**") and shall otherwise be junior only to any valid, perfected, unavoidable liens or security interests that are superior to the Prepetition Liens in existence as of the Petition Date, or any valid and unavoidable liens or security interests that are senior in priority to the Prepetition Liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Permitted Prior Liens**"). Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Chapter 11 Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case or any Successor Case, or upon the dismissal of the Chapter 11 Case or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Case**"). The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

-4-
INTERIM ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL

17338880.3

5.      As further adequate protection of the interests of Wilmington and Cal-Mortgage in the Collateral against any diminution in value of such interests in the Collateral Wilmington and Cal-Mortgage are hereby granted, subject to the Carve-Out, as, and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Case and any Successor Case (the "**Adequate Protection Superpriority Claims**").

6.      Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, as and to the extent provided by Bankruptcy Code Section 507(b); provided, however, that the Adequate Protection Superpriority Claims shall be subject to the Carve-Out.

7.      Nothing herein shall waive, impair, or preclude the right of the Debtor, or any other party in interest, to seek to avoid the liens of the Wilmington or Cal-Mortgage on the grounds that said liens were not perfected in a due and proper manner, or on any other appropriate grounds.

8.      As additional protection for the Debtor's use of cash collateral, the Debtor shall provide to Wilmington and Cal-Mortgage (or their respective counsels of record, if any) on Wednesday of each week (commencing with the second week after the Petition Date), a weekly report in the same form as the Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Budget and detailing any variances of more than 10% from the disbursements and receipts in the Budget.

9.      Debtor's ability to use cash collateral under this Interim Order shall terminate upon the entry of the Final Order or additional interim order regarding use of cash collateral.

17338880.3

10.     Notwithstanding Bankruptcy Rule 4001(a)(1), this Interim Order is not stayed and shall be effective upon the date of its entry on the docket.

11.     The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the performance of each and every right and obligation set forth in this Interim Order.

12.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Interim Order.

13.     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

14.     The hearing to consider the entry of a Final Order on the Motion will be held on _____, 2021 at _____ a.m/p.m. (PDST). The Debtor shall, on or before _____, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order and a copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party that has filed prior to such date a request for notices with this Court and to counsel for any statutory committee of unsecured creditors appointed pursuant to Bankruptcy Code section 1102, the Internal Revenue Service, all state taxing authorities in the states in which the Debtor has tax liability, any federal or state regulatory authorities governing the Debtor's industry, the U.S. Attorney's Office, the California Attorney General, Wilmington (or its counsel of record, if any), Cal-Mortgage (or its counsel of record, if any), and all parties asserting liens against or security interest in, any of the collateral that is addressed in this Interim Order. The notice of entry of this Interim Order shall state that any party in interest objecting to the entry of the Final Order authorizing the use of cash collateral shall file written objections with the United States Bankruptcy Court Clerk for the Northern District of California no later than 4:00 p.m. (PDST) on _____, 2021, and objections shall be served so that the same are received on or before such date to: (i) proposed counsel to the Debtor:  Hanson

Bridgett LLP, 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596, Attn: Neal Wolf (nwolf@hansonbridgett.com), (ii) counsel to any statutory committee appointed in the Chapter 11 Case; and (iii) the U.S. Trustee, 450 Golden Gate Avenue, 5th Floor, Suite #05-0513 San Francisco, CA 94102, Attn: _____).

*** END OF ORDER ***

17338880.3

**EXHIBIT 1 to Exhibit A**

**EXHIBIT 1 to Exhibit A**

## California-Nevada Methodist Homes
## 13-Week Cash Flow
## Cash Flow Summary

| Description | March | | | April | | | | May | | | | June | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 19-Mar | 26-Mar | 2-Apr | 9-Apr | 16-Apr | 23-Apr | 30-Apr | 7-May | 14-May | 21-May | 28-May | 4-Jun | 11-Jun | |
| | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected |
| **REVENUE** | | | | | | | | | | | | | | |
| **Net Sales** | | | | | | | | | | | | | | |
| Monthly Care Fees | 210 | 210 | 210 | 263 | 263 | 263 | 263 | 262 | 262 | 262 | 262 | 208 | 208 | 3,145 |
| Private Fees | 52 | 52 | 52 | 65 | 65 | 65 | 65 | 66 | 66 | 66 | 66 | 52 | 52 | 782 |
| Medicare | 38 | 38 | 38 | 49 | 49 | 49 | 49 | 49 | 49 | 49 | 49 | 38 | 38 | 581 |
| Other Income | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 12 |
| Misc Revenue | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 28 |
| Amortization of Entrance Fees | 37 | 37 | 37 | 46 | 46 | 46 | 46 | 48 | 48 | 48 | 48 | 38 | 38 | 563 |
| Admin Revenue | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Sales** | 341 | 341 | 341 | 425 | 425 | 425 | 425 | 427 | 427 | 427 | 427 | 339 | 339 | 5,111 |
| **RECEIPTS** | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | |
| A/R Collections | 302 | 302 | 302 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 301 | 301 | 4,543 |
| Other Cash Collections | | | | | | | | | | | | | | |
| **Cash Receipts** | 302 | 302 | 302 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 301 | 301 | 4,543 |
| **DISBURSEMENTS** | | | | | | | | | | | | | | |
| **Payroll and Benefits** | | | | | | | | | | | | | | |
| Payroll | 143 | 143 | 143 | 179 | 179 | 179 | 179 | 180 | 180 | 180 | 180 | 144 | 144 | 2,153 |
| Payroll Taxes | 12 | 12 | 12 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 16 | 12 | 12 | 186 |
| Benefits | 37 | 37 | 37 | 48 | 48 | 48 | 48 | 47 | 47 | 47 | 47 | 39 | 39 | 569 |
| All Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Payroll** | 192 | 192 | 192 | 243 | 243 | 243 | 243 | 243 | 243 | 243 | 243 | 195 | 195 | 2,907 |
| *Payroll%* | *56.4%* | *56.4%* | *56.4%* | *57.1%* | *57.1%* | *57.1%* | *57.1%* | *56.8%* | *56.8%* | *56.8%* | *56.8%* | *57.4%* | *57.4%* | *56.9%* |
| **Operational Disbursements** | | | | | | | | | | | | | | |
| Food Service | 36 | 36 | 36 | 44 | 44 | 44 | 44 | 44 | 44 | 44 | 44 | 35 | 35 | 530 |
| Housekeeping | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 3 | 3 | 42 |
| Laundry | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Plant and Operations | 14 | 14 | 14 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 14 | 14 | 205 |
| Utilities | 23 | 23 | 23 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 23 | 23 | 350 |
| Nursing | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 8 | 8 | 113 |
| Assisted Living | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 8 |
| Administration | 41 | 41 | 41 | 52 | 52 | 52 | 52 | 50 | 50 | 50 | 50 | 40 | 40 | 612 |
| Marketing | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 36 |
| Medical Receptionist | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Activities | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 33 |
| Medical Care Ancillary | 11 | 11 | 11 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 11 | 11 | 171 |
| Inservice Education | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Home Office Charges | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Social Services | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Misc. | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | 140 | 140 | 140 | 176 | 176 | 176 | 176 | 175 | 175 | 175 | 175 | 140 | 140 | 2,105 |

Case: 21-40363    Doc# 13    Filed: 03/16/21    Entered: 03/16/21 16:51:34    Page 23 of 32

CNMH Financial Package v2

13 Week Cash Flow

| Description | March | | | April | | | | May | | | | June | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 19-Mar | 26-Mar | 2-Apr | 9-Apr | 16-Apr | 23-Apr | 30-Apr | 7-May | 14-May | 21-May | 28-May | 4-Jun | 11-Jun | |
| | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | 332 | 332 | 332 | 419 | 419 | 419 | 419 | 417 | 417 | 417 | 417 | 335 | 335 | 5,013 |
| **Other (Income)/Expenses** | | | | | | | | | | | | | | |
| Silverman Consulting | 6 | 6 | 6 | 10 | 10 | 10 | 10 | 5 | 5 | 5 | 5 | 4 | 4 | 86 |
| All Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Debt Service** | | | | | | | | | | | | | | - |
| Interest Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Bond Principal Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Other Expenses/ (Income)** | 6 | 6 | 6 | 10 | 10 | 10 | 10 | 5 | 5 | 5 | 5 | 4 | 4 | 86 |
| **Total Disbursements** | 338 | 338 | 338 | 429 | 429 | 429 | 429 | 422 | 422 | 422 | 422 | 339 | 339 | 5,099 |
| **Net Cash Flow** | (36) | (36) | (36) | (49) | (49) | (49) | (49) | (43) | (43) | (43) | (43) | (38) | (38) | (555) |
| | | | | | | | | | | | | | | |
| **Sources & Uses Summary** | | | | | | | | | | | | | | Total |
| **Implied EBITDA** | (29) | (29) | (29) | (39) | (39) | (39) | (39) | (38) | (38) | (38) | (38) | (34) | (34) | (465) |
| Accounts Receivable | (1) | (1) | (1) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | 0 | 0 | (4) |
| Accounts Payable | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Accruals | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Working Capital** | (1) | (1) | (1) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | 0 | 0 | (4) |
| **Debt Service and Other** | | | | | | | | | | | | | | - |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Silverman Consulting | (6) | (6) | (6) | (10) | (10) | (10) | (10) | (5) | (5) | (5) | (5) | (4) | (4) | (86) |
| **Other Disbursements** | (6) | (6) | (6) | (10) | (10) | (10) | (10) | (5) | (5) | (5) | (5) | (4) | (4) | (86) |
| **(Increase)/Decrease in Cash** | 36 | 36 | 36 | 49 | 49 | 49 | 49 | 43 | 43 | 43 | 43 | 38 | 38 | 555 |

# California-Nevada Methodist Homes
## 13-Week Cash Flow
### Cash Rollforward

| Description | March | | | | April | | | | May | | | | June | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12-Mar | 19-Mar | 26-Mar | 2-Apr | 9-Apr | 16-Apr | 23-Apr | 30-Apr | 7-May | 14-May | 21-May | 28-May | 4-Jun | 11-Jun | Projected |
| | Actual | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | |
| **CASH** | | | | | | | | | | | | | | | |
| **Cash** | | | | | | | | | | | | | | | |
| Balance (Beginning) | - | 1,690 | 1,653 | 1,617 | 1,581 | 1,531 | 1,482 | 1,432 | 1,383 | 1,340 | 1,297 | 1,254 | 1,211 | 1,173 | 1,690 |
| Receipts | - | 302 | 302 | 302 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 379 | 301 | 301 | 4,543 |
| Disbursements | - | (338) | (338) | (338) | (429) | (429) | (429) | (429) | (422) | (422) | (422) | (422) | (339) | (339) | (5,099) |
| **Cash** | 1,690 | 1,653 | 1,617 | 1,581 | 1,531 | 1,482 | 1,432 | 1,383 | 1,340 | 1,297 | 1,254 | 1,211 | 1,173 | 1,135 | 1,135 |
| *Increase/(Decrease)* | - | (36) | (36) | (36) | (49) | (49) | (49) | (49) | (43) | (43) | (43) | (43) | (38) | (38) | (555) |

Case: 21-40363   Doc# 13   Filed: 03/16/21   Entered: 03/16/21 16:51:34   Page 26 of 32

1 | HANSON BRIDGETT LLP
2 | NEAL L. WOLF, SBN 202129
nwolf@hansonbridgett.com
3 | 425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
4 | Facsimile:   (415) 541-9366

5 | *Proposed Attorneys for Debtor and Debtor in Possession*

6 |

7 |

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF SAN FRANCISCO**

10 |

11 | CALIFORNIA-NEVADA METHODIST HOMES,[1]

12 | Debtor.

| | |
|---|---|
| CALIFORNIA-NEVADA METHODIST HOMES,[1] <br><br> Debtor. | Case No. 21-40363 <br><br> **FINAL ORDER (A) AUTHORIZING POST-PETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, AND (C) GRANTING RELATED RELIEF** |

---

[1]    The last four digits of the Debtor's federal tax identification number are 2411. The mailing address for the Debtor is 1850 Alice Street Oakland, CA 94612.

Case: 21-40363    Doc# 13    Filed: 03/16/21    Entered: 03/16/21 16:51:34    Page 27 of 32

Upon consideration of the motion (the "**Motion**")[2] of California-Nevada Methodist Homes, as debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**") pursuant to section 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") for entry of an interim order and final order (i) authorizing the use of cash collateral, (ii) granting adequate protection, and (iii) providing related relief; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**"); and this matter being a core proceeding pursuant to 28 U.S.C. § 157; and venue of these Chapter 11 Cases and the Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion was sufficient under the circumstances, and it appearing that other or further notice need not be provided; and the Court having considered the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearing held before this Court to consider the Motion on an interim basis (the "**Interim Hearing**"); and the Court having entered an order (the "**Interim Order**") granting the relief requested in the Motion on an interim basis; and notice of the hearing held before this Court to consider the Motion on a final basis (the "**Final Hearing**") having been given to all appropriate parties on a timely basis in accordance with the terms and conditions of the Interim Order; and a hearing on the Final Order (the "**Final Hearing**"); and the Final Hearing having been conducted by the Court; and the Court having found that the legal and factual bases set forth in the Motion and at the Interim Hearing and the Final Hearing establish good and sufficient just

---

[2] Capitalized words not otherwise defined herein shall have the same meanings ascribed to such terms in the Motion.

-2-
FINAL ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL

17339716.3

cause for the relief granted in this final order (the "**Final Order**"),

   **IT IS HEREBY ORDERED THAT:**

   1.    The Motion is hereby **GRANTED**, on an final basis, to the extent set forth in this Final Order. Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

   2.    Subject to the terms and conditions set forth in this Final Order, the Debtor is authorized pursuant to Bankruptcy Code sections 105, 361, 362, and 363, and Bankruptcy Rules 2002, 4001, 6003, and 9014 to use cash collateral on a final basis. The cash collateral may only be used to fund the types and corresponding amounts of itemized expenditures contained in the budget attached hereto as Exhibit 1 (the "**Budget**"); provided, however, that the Debtor may use cash collateral in excess of the aggregate operating disbursements so long as the percentage of deviation of the aggregated expenses during the 4 week measuring period does not exceed ten percent (10%) (the "**Variance**").

   3.    As adequate protection for the interest of Wilmington and Cal-Mortgage, for, and solely to the extent of, any diminution in the value of Wilmington's and Cal-Mortgage's respective interest in the Collateral resulting from (i) the Debtor's use of cash collateral, (ii) the use, sale, or lease of the Collateral (other than cash collateral) pursuant to section 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, Wilmington and Cal-Mortgage are hereby granted a continuing replacement security interest in, and lien (collectively, the "**Adequate Protection Liens**"), which shall have the same priority, validity, force, extent, status of perfection (if any), and effect as the prepetition liens that they replace (the "**Prepetition Liens**"), effective as of the Petition Date without the necessity of Wilmington or Cal-Mortgage taking any further action, upon the right, title and interest in the following property of the Debtor:

a.　　All pre-petition Collateral of Wilmington or Cal-Mortgage, including all

　　　　　　　proceeds, profits, rents, and products thereof; and

　　　　　b.　　Property acquired by the Debtor after the Petition Date, which is of

　　　　　　　the same nature, kind, and character as the prepetition Collateral,

　　　　　　　and all proceeds, profits, rents, and products thereof.

　　　4.　　The Adequate Protection Liens shall be subject to (a) allowed professional fees and disbursements of professionals (i) retained by the Debtor, pursuant to Bankruptcy Code section 327 and (ii) by professionals retained by the official committee of unsecured creditors, if any, pursuant to Bankruptcy Code section 1103(a) and (b) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, and any fees payable to the Clerk of the Bankruptcy Court (collectively, the "**Carve Out**") and shall otherwise be junior only to any valid, perfected, unavoidable liens or security interests that are superior to the Prepetition Liens in existence as of the Petition Date, or any valid and unavoidable liens or security interests that are senior in priority to the Prepetition Liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Permitted Prior Liens**"). Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Chapter 11 Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case or any Successor Case, or upon the dismissal of the Chapter 11 Case or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Case**"). The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

　　　5.　　As further adequate protection of the interests of Wilmington and Cal-

-4-

17339716.3

Mortgage in the Collateral against any diminution in value of such interests in the Collateral Wilmington and Cal-Mortgage are hereby granted, subject to the Carve-Out, as, and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Case and any Successor Case (the "**Adequate Protection Superpriority Claims**").

6. Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, as and to the extent provided by Bankruptcy Code Section 507(b); provided, however, that the Adequate Protection Superpriority Claims shall be subject to the Carve-Out

7. Nothing in this Final Order shall waive, impair, or preclude the right of the Debtor, or any other party in interest, to seek to avoid the liens of the Wilmington or Cal-Mortgage on the grounds that said liens were not perfected in a due and proper manner, or on any other appropriate grounds.

8. As additional protection for the Debtor's use of cash collateral, the Debtor shall provide to Wilmington and Cal-Mortgage (or their respective counsels of record, if any) on Wednesday of each week (commencing with the second week after the Petition Date), a weekly report in the same form as the Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Budget and detailing any variances of more than 10% from the disbursements and receipts in the Budget.

9. Notwithstanding Bankruptcy Rules 4001(a)(1) and 6004(h), to the extent applicable, this Final Order is not stayed and shall be effective upon the date of its entry on the docket.

10. The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the performance of each and every right and obligation set forth in this

-5-

17339716.3

Final Order.

11.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Final Order.

12.     The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

*** END OF ORDER ***

17339716.3

-6-
FINAL ORDER AUTHORIZING POST-PETITION USE OF CASH COLLATERAL